UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| THOMAS E. PEREZ,<br><br>    Plaintiff,<br><br>v.<br><br>LIUNA LOCAL 261,<br><br>    Defendant. | Case No. 14-mc-80336-LB<br><br>**ORDER ENFORCING SUBPOENA**<br>Re: ECF Nos. 1, 17 |

## INTRODUCTION

This is a petition to enforce an administrative subpoena *duces tecum* under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 521. (ECF No. 1.)[1] The court has subject-matter jurisdiction under 15 U.S.C. §§ 49, 50, 29 U.S.C. § 1331, and 29 U.S.C. § 1345. The Secretary of Labor issued the subpoena to respondent Local 261 of the Laborers' International Union of North America ("LIUNA"). The subpoena seeks contact information for Local 261's members to aid the Secretary's investigation of the union's June 2014 election of officers. Citing the subpoena's possible effect on the First Amendment rights of the union and its members, Local 261 has refused to comply with the subpoena. For the reasons given below, the court enforces the subpoena to the degree indicated — a revision that reflects the governing law

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

ORDER ENFORCING SUBPOENA – 14-mc-80336 LB

and incorporates the parties' proposed compromise positions. The court also holds that the LMRDA's statute of limitation (29 U.S.C. § 482(b)) is tolled until Local 261 complies with the subpoena.

## STATEMENT

The subpoena at issue arises from the Secretary's investigation of a complaint about Local 261's June 2014 election of union officials. That complaint was made by a union member, Ignacio Castillo, who unsuccessfully challenged incumbent candidates to become a Local 261 official. Mr. Castillo made two grievances under the LMRDA. He first claimed that, by holding the election as a walk-in ballot at the union's San Francisco hall — and not providing for absentee balloting by mail — the union depressed voting by members living outside San Francisco, in Marin and San Mateo counties. He also charged that certain of Local 261's members, employees of the City and County of San Francisco, unlawfully used municipal vehicles to drive supporters of Local 261 incumbents to the polls.

Some background will aid the discussion. In 2012, the LIUNA locals that had previously represented Marin County and San Mateo County members (Local 291 in Marin, and Local 389 in San Mateo), merged into Local 261. (ECF No. 9 at 5-6.) Following this merger, the expanded Local 261 continued to use its San Francisco meeting hall as its headquarters. (*Id.* at 6.) More to the present point, Local 261 claims that the Marin and San Mateo facilities of former Locals 291 and 389 were inadequate to the holding of elections. (*See* ECF No. 9 at 6.) The Local 261 hall in San Francisco, by contrast, was sufficiently outfitted to host the balloting and is centrally located in the union's jurisdiction. (ECF No. 9 at 19.) It is also accessible from public transit. (*Id.*) According to Local 261, to reach the San Francisco hall and vote by walk-in ballot, former Local 389 members would have to travel an additional 19 miles from their former voting location; Local 291 members, an additional 22 miles from theirs. (*Id.* at 7.)

The unsuccessful candidate, Mr. Castillo, at bottom complains that, by holding the ballot in San Francisco, members of the former Marin and San Mateo locals were discouraged from voting. The Secretary claims that 17% of the total union voted in the election. (ECF No. 15 at 7.) From the former Marin and San Mateo regions of Locals 291 and 389, however, the respective

ORDER ENFORCING SUBPOENA – 14-mc-80336 LB                                                2

participation rates were 2% and 8%. (*Id.*)

On November 21, 2014, in the course of investigating Mr. Castillo's complaint, the Secretary issued Local 261 the subject subpoena. The subpoena directed Local 261 to produce: "Any and all contact information for all LIUNA Local 261 members who were active as of June 18-19, 2014, including, but not limited to: personal telephone numbers, street mailing addresses, and email addresses." (ECF No. 3 at 12.) The subpoena directed Local 261 to comply by November 21, 2014. (*Id.*) The Secretary sought this information, as "material and relevant to [the Department's] investigation," to enable the Department "to locate and interview members to determine whether Local 261 violated or is violating the LMRDA in connection with the June 2014 officers' election." (Sorrento Decl. – *Id.* at 2-3, ¶ 6.)

Local 261 has refused to comply. Turning over its members' personal contact information, the union argues, is unnecessary to the Department's determining whether anyone was discouraged from voting by the increased distance to the San Francisco polling location. More fundamentally, Local 261 argues that the subpoena infringes upon the First Amendment speech and associational rights of the union and its members. (*See generally*, ECF No. 9 at 11-24.)

The union has submitted two declarations to support its claim of First Amendment infringement. The first declaration is from its Business Manager, Mr. Ramón Hernandez. (Hernandez Decl. – ECF No. 12 at 1.) Mr. Hernandez is the incumbent who defeated Mr. Castillo in the challenged election. (ECF No. 9 at 7.) Mr. Hernandez asserts that complying with the subpoena would negatively impact the union's, and its members', First Amendment rights to free speech and free association. (*See generally* ECF No. 12.)[2] He explains, for example, that workplace visits to union members from federal investigators are "very disruptive." (*Id.* at 7, ¶¶ 35-36.) He continues:

> Depending on the particular circumstances of each member, a visit from a government official can scare members and co-workers. Other members, non-members and potential members will always wonder what kind of trouble the member or the union is in if a federal investigator is interviewing him or her.

---

[2] Mr. Hernandez's declaration is also the primary evidentiary basis for much of the background discussion regarding the merger of the LIUNA locals, the condition of their facilities, and the logistical details of the June 2014 election. (ECF No. 12 at 1-7, ¶¶ 1-32.)

ORDER ENFORCING SUBPOENA – 14-mc-80336 LB      3

> Employers will also wonder why members are being visited by governmental agents. . . . This investigation has already resulted in our members becoming scared and suspicious of Local 261.

(*Id.* at 7, ¶ 36.) Further:

> Local 261 has members who have served time in jail, are involved in whistleblower actions, including complaints to OSHA, are parties in pending actions among themselves, have pending Workers Compensation actions, pending personal injury actions, and other litigation, members who have immigration issues, or have friends or relatives who have immigration issues, have non-traditional family relationships, amongst many other concerns. Any investigation by a federal agent will raise serious concerns with our members, about themselves, their families, other Union members, and the Union itself. This will be particularly heightened if they believe that the Union gave their contact information to the federal government. Members will blame the Union for any contact by a federal agent. No matter how much explanation a federal government employee of the DOL would provide, rumors would spread as to who had done what wrong, who was not a lawful resident citizen, who may be involved with some unlawful activity, and so on.

(*Id.* at 8-9, ¶ 41.) Mr. Hernandez offers more in this vein, projecting the likely consequences of Local 261's complying with the subpoena, but this last excerpt gives the flavor of the whole:

> [I]f we provide this contact information it will create grave associational concerns amongst our members. There is no way for the DOL to simply contact members without creating an adverse impact to our members, many of whom have concerns about retribution and retaliation for themselves, their families and friends.

(*Id.* at 10, ¶ 44.)

The second declaration that Local 261 has submitted is from Ms. DeShelia Mixon, a union member whom the Department contacted in investigating Mr. Castillo's complaint — or, rather, whom the Department attempted to contact. (Mixon Decl. – ECF No. 11.) Department investigator Regina Diaz visited Ms. Mixon's workplace on November 3, 2014. (*Id.* at 2, ¶ 5.) Unable to find Ms. Mixon, Ms. Diaz taped her business card to the door of Ms. Mixon's office, with the handwritten note, "Pl[ea]s[e] call." (*Id.* at 3, ¶¶ 5-6; ECF No. 11-1 at 2-3; Diaz Decl. – ECF No. 15-3.) Mrs. Diaz returned to the site a couple of days later, this time joined by Department investigator Jeff Sorrento. (ECF No. 15-3 at 2, ¶ 5.) Ms. Mixon was not at the job site. Ms. Diaz and Mr. Sorrento spoke with Ms. Mixon's supervisor, explaining that they wished to speak with Ms. Mixon and any other Local 261 member regarding the union's recent election. (*Id.*) Ms. Diaz

showed her business card to the supervisor, and perhaps left a card with him. (*See id.*; ECF No. 11 at 2, ¶¶ 9-10.) Ms. Mixon says:

> Ms. Diaz's visit and her leaving a business card taped on the door of my office made me very nervous. As an African-American female, I am w[]ary of law enforcement officers and their visit to my workplace made me very nervous.
>
> . . . .
>
> I am nervous about being interviewed by government officials just because I am in a union. I was offended by the Investigator's card being left at my workplace. My boss and coworkers all were able to see the card. I believe it implies that I did something wrong.
>
> When DOL investigators came to my workplace to investigate, it made me feel like my participation in the union was being watched. I became suspicious of what my union was doing that was resulting in government officers visiting my workplace . . . . It makes me nervous to be in a union and it makes me fearful about what it means to be a member of Local 261 . . . . It also makes me second-guess being involved in the union.

(ECF No. 11 at 2-3, ¶¶ 8, 14-15.) Ms. Mixon was elected to be a Local 261 officer in the June 2014 polling. (ECF No. 15-3 at 3.)

The parties have both proposed compromises to break this impasse. These proposals embody each side's view on what is necessary for, or in any case appropriate to, the Department's investigating both issues: (1) whether former members of Locals 291 and 389 were discouraged from voting because that would have required their traveling into San Francisco; and (2) whether municipal-employee members of Local 261 used official vehicles to transport to the polls voter who were likely to support incumbents. With that recalled, the Department has offered

> to limit the subpoena's request to contact information for (1) former members of Locals 291 and 389 who were eligible to vote in Local 261's June 18-19, 2014 election; and (2) Local 261 members employed by the City and County of San Francisco who were eligible to vote in Local 261's June 18-19, 2014 election. The contact information shall include information sufficient for the Secretary's investigators to communicate directly with members, for example, including but not limited to full names, mailing addresses, phone numbers and/or email addresses.

(ECF No. 17 at 5.) For its part, Local 261

> is willing to provide the contact information of any members identified by Mr. Castillo, and/or others, as not having been able to vote due to access issues. In addition, Local 261 is willing to provide dispatches for Local 261 members in a period preceding the election to allow the Secretary to see where members who

> were working worked around the time of the election.
>
> With regard to public sector members, Local 261 is willing to provide contact information for the two members who drove a van to the election and the contact information of anyone who rode in the van.

(*Id.* at 5-6.) Local 261 has given the Department a list of all members who voted in the election, as well as a list of all members who were active at the time of the June 2014 election, which list indicates the cities in which the respective union members reside. (*E.g., id.* at 6.)

## GOVERNING LAW

The parties do not disagree on the governing legal rules. "It is evident from the LMRDA that Congress intended that the Secretary exercise broad authority in investigating labor unions." *McLaughlin v. Serv. Employees Union, AFL-CIO*, 880 F.2d 170, 174 (9th Cir. 1989). To issue a *prima facie* enforceable subpoena, the Department must show the following: 1) Congress has granted it the authority to investigate the alleged violation; 2) the Department followed appropriate procedures in issuing the subpoena; and 3) the information sought is "relevant and material to the investigation." *See, e.g., EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1428 (9th Cir. 1983). "[C]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the Agency." *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001).

Courts may interfere with an administrative subpoena where the subpoena would infringe constitutional rights. *See, e.g., McLaughlin*, 880 F.2d at 174-75. "Nevertheless a district court may not intervene in an investigation, notwithstanding an allegation of interference with speech and associational rights, in the absence of a *prima facie* showing of actual past or threatened infringement." *Id.* at 175. To make out a *prima facie* First Amendment challenge in this area, Local 261 must "demonstrate: '(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.'" *Id.* The union moreover must produce "objective and articulable facts, which go beyond broad allegations or subjective fears." *E.g., id.*

If the union establishes this *prima facie* First Amendment challenge, the burden then shifts to the Secretary to show (1) "that the information sought . . . is rationally related to a compelling

governmental interest," and (2) that "the government's disclosure requirements are the 'least restrictive means' of obtaining the desired information." *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1461-62 (9th Cir. 1991) (quoting and citing cases).

**ANALYSIS**

Two points are dispositive. First, Local 261 has not made out a *prima facie* case that the subpoenas will unduly "chill" the speech or associational rights of their members or of the union itself. Second, even if the union had shown a *prima facie* constitutional problem, the Department has shown that the information it seeks is rationally related to a compelling governmental interest, and is the "least restrictive means" of obtaining the information it needs to investigate whether the June 2014 election violated the LMRDA.

**I. THE UNION HAS NOT SHOWN A *PRIMA FACIE* FIRST AMENDMENT INFRACTION**

Under governing Ninth Circuit law, the two declarations that Local 261 has submitted do not make out a *prima facie* First Amendment challenge to the Department's subpoena. Consider first the declaration of Ramón Hernandez. Mr. Hernandez raises serious concerns — but in an entirely speculative mode. He invokes his own experience but offers no concrete examples in which an investigation of this type, seeking the information that it does, has negatively impacted anyone's speech or decision to associate within Local 261. Mr. Hernandez speaks only in terms of what could happen based on the general characteristics of Local 261's membership. (*See generally* ECF No. 12.)

The Ninth Circuit has said: "Bare allegations of possible first amendment infringement are insufficient to justify judicial intervention into a pending investigation." *McLaughlin*, 880 F.2d at 175. This alone captures the fatal deficiency in Mr. Hernandez's declaration. He does not offer, as he must offer, "objective and articulable facts, which go beyond broad allegations or subjective fears." *Id.* (citing, *inter alia*, *Brock v. Local 375, Plumbers Int'l Union of America, AFL-CIO,* 860 F.2d 346, 349 (9th Cir.1988)).

The declaration of DeShelia Mixon is different. Hers is a concrete example: two Department investigators dropped a business card off at her workplace and spoke with her supervisor. (ECF

ORDER ENFORCING SUBPOENA – 14-mc-80336 LB          7

No. 11.) The court acknowledges that her concerns are genuine and serious. Nonetheless, Ms. Mixon does not make out a First Amendment threat that will defeat the Department's subpoena, or impede its investigation into the June 2014 election. First, what Ms. Mixon describes is not so much an infringement on her right to free speech and association; instead, she mainly describes being made "nervous" by her relatively mild contact with Department investigators. *See id.* at 2, ¶ 8.) She has not claimed that this has somehow trammeled her ability to speak freely. When she touches upon associational rights, Ms. Mixon does claim that her experience made her "suspicious" of the union, "fearful" of being a union member, and that she has "second-guess[ed] being involved in the union." (*Id.* at 3, ¶ 15.) Yet the court cannot ignore other concrete facts. Ms. Mixon is apparently an officer of Local 261 who gained her seat through the challenged election. Whatever doubts may have been occasioned by the Department's visit to her workplace seem to have been limited. Finally, of the roughly 5000 members embraced in the Department's initial subpoena, or even the approximately 1500 subject to the compromise subpoena that the Department has proposed (*see* ECF No. 17 at 1, 3), Ms. Mixon is the only Local 261 member who has testified to any specific First Amendment harm.

    The Ninth Circuit has said: "We are willing to tolerate some chilling effect if it is necessary to do so in order to protect a compelling governmental interest." *Dole*, 950 F.2d at 1461. (There is no real question that the subpoena seeks information that is rationally related to the Department's compelling interest in enforcing the LMRDA. *See id.* at 1461-62 ("[T]here is little doubt that the Department's purpose of investigating possible criminal violations of the LMRDA serves a compelling governmental interest." (citing *Branzburg v. Hayes*, 408 U.S. 665, 700 (1972)). The declarations of Mr. Hernandez and Ms. Mixon do not raise a "reasonable probability" that complying with the subpoena will subject anyone to "threats, harassment, or reprisals from either Government officials or private parties." *See Doe v. Reed*, 561 U.S. 186 (2010). The union consequently has not shown a *prima facie* First Amendment challenge to block the subpoena.

///

///

## II. COMPELLING INTEREST & LEAST RESTRICTIVE MEANS

Even if Local 261 had made out a *prima facie* First Amendment problem, the Department has shown that the information it seeks is "rationally related to a compelling governmental interest" and that the subpoena — especially in the revised form that the Department has proposed as a compromise solution (*see* ECF No. 17 at 5) — is the "least restrictive means" of obtaining the information that the Department needs to investigate the challenged election.

The relationship to a compelling governmental interest is conclusively established by the language quoted earlier from the Ninth Circuit's decision in *Dole*, 950 F.2d at 1461-62 ("[T]here is little doubt that the Department's purpose of investigating possible criminal violations of the LMRDA serves a compelling governmental interest."). Here, the Department's investigation is into whether the union's refusal to provide alternative methods to in-person voting in San Francisco unreasonably deprived members of their right to vote and, if so, whether that violation may have affected the election.

The inquiry into "least restrictive means" is perhaps unavoidably a question of practical balance. Conducting this assessment in *Dole, supra*, the Ninth Circuit explained that, if a district court restricts an administrative subpoena, and that restriction "would unduly burden the Secretary's efforts to conduct an adequate investigation, that restriction would be inconsistent with the requirement that the Secretary be afforded the necessary means of obtaining the information she seeks and we would be required to strike it." *Dole*, 950 F.2d at 1462 (citing *Brock v. Local Union 375, Plumbers Int'l Union of America, AFL-CIO,* 860 F.2d 346, 350 (9th Cir. 1988)).

Local 261 challenges the request for its members' contact information by arguing that it has already given the Department all the information it should need to decide whether former members of the Marin and San Mateo locals were hampered from voting because the polling place was in San Francisco. (ECF No. 9 at 15-16.) The Department should be able to assess this challenge adequately, the union contends, by the list the union has already given the Department showing its active members' cities of residence. It is not hard to see why this is insufficient to the Department's investigation. Where a given member resides says something, but hardly everything, about whether she was impeded from voting on the days of the election because polling was held

only in San Francisco. Common reasoning tells us that more will impact that fact than a union members mere place of residence. That information is relevant, of course, but it would not give a full picture of the extent to which the San Francisco location might have impacted members' decisions to participate in, or abstain from, the election. And the court cannot place a restriction on the subpoena that would "unduly burden" the Department's investigation. *Dole*, 950 F.2d at 1462. Restricting the Department to only the union members' cities of residence would prevent the Department from making a normally full inquiry into the circumstances that might have kept members from the polls; such a restriction would more than "unduly burden" an adequate investigation, it would all but prevent it. Furthermore, the Department has proposed limiting its subpoena to only those union members who were formerly members of the Marin and San Mateo locals. (ECF No. 17 at 5.) With that reduction, the court has no difficulty holding that the information sought by the current subpoena constitutes the "least restrictive means" available for conducting an appropriate investigation.

With respect to the municipal-vehicles issue, too, the Department should be able to obtain enough contact information that will allow it to "communicate directly" with Local 261 members who were employed by the City and County of San Francisco and were eligible to vote in the June 2014 election. The union's counterproposal is again unduly restrictive. The union has offered to provide contact information for the two individuals who drove municipal vans to the polling place, and for "anyone who rode in the van." (ECF No. 17 at 6.) Again, it is not hard to see that this limitation would crimp the Department's ability to inquire into the circumstances in a normal way. The most immediate objects of an investigation are not always the most forthcoming. At least there is no guarantee that they will be. Normal investigations, moreover, often require going beyond the direct participants in a given situation to those with whom those participants have spoken — or, in a case like this, perhaps to others who were offered a ride, but declined it, or who wanted a ride but were denied one. At all lengths, it takes only a moment's reflection to see that, merely to conduct a normally effective inquiry, the Department cannot be limited to asking questions only of people who rode in municipal vehicles on the day of the election.

///

# CONCLUSION

The court enforces the subpoena to this degree: Local 261 must produce to the Department all the contact information it possesses for: 1) former members of Locals 291 and 389 who were eligible to vote in the election of June 18-19, 2014; and 2) Local 261 members employed by the City and County of San Francisco who were eligible to vote in the election of June 18-19, 2014. Local 261 must product this information by March 5, 2015. The LMRDA statute of limitation (29 U.S.C. § 482(b)) is tolled for the period from November 24, 2014 until Local 261 has fully complied with the subpoena. *See Brock v. Am. Postal Workers Union, AFL-CIO, Chicago Local*, 815 F.2d 466, 470 (9th Cir. 1987) ("This court has recognized that the sixty-day limitations period may be tolled by conduct on the part of the Union which impedes or delays the Secretary's investigation.") (citing cases).

This disposes of ECF Nos. 1, 17.

**IT IS SO ORDERED**.

Dated: February 11, 2015

_____
Laurel Beeler
United States Magistrate Judge